IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION

ANTHONY DEWAYNE WALKER                                    PLAINTIFF
ADC #107683

v.                          No: 2:17-cv-00132 BSM/PSH

WENDY KELLEY, *et al.*                                    DEFENDANTS

## FINDINGS AND RECOMMENDATION

## INSTRUCTIONS

The following proposed Recommendation has been sent to Chief United States District Judge Brian S. Miller. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection, and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

## DISPOSITION

### I. Introduction

Plaintiff Anthony Dewayne Walker, an inmate at the East Arkansas Regional Unit of the Arkansas Department of Correction (ADC), filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 on August 10, 2017, alleging that defendants violated his constitutional rights by filing disciplinaries against him and placing him in administrative segregation. *See* Doc. No. 2. The defendants are Wendy Kelley, Jeremy Andrews, Kenyon Randle, and

Leroy Golatt. *Id.* Defendants are sued in both their individual and official capacities. *Id.* at 2.

The Court screened Walker's amended complaint (Doc. No. 7) and concluded that Walker's equal protection claim should proceed while his due process,[1] conditions-of-confinement, and injunctive relief claims should be dismissed. Doc. No. 8. The Court's recommendation was subsequently adopted. Doc. No. 15.

Before the Court is a motion for summary judgment and related pleadings filed by the defendants (Doc. Nos. 45-47). Walker filed a response, brief in support, and statement of undisputed material facts (Doc. Nos. 54-56). For the reasons described herein, the undersigned recommends that defendants' motion for summary judgment be granted.

## II. Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986). When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a

---

[1]  Walker's due process claim included an argument that his due process rights were violated because defendants did not follow ADC policy. In recommending dismissal of that claim, the Court noted that prisoners do not have a federally protected due process right to require prison officials to comply with internal rules or procedures. *See* Doc. No. 8 at 5 (citing *Phillips*, 320 F.3d at 847 (8th Cir. 2003); *Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997)).

genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). An assertion that a fact cannot be disputed or is genuinely disputed must be supported by materials in the record such as "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . .". FED. R. CIV. P. 56(c)(1)(A). A party may also show that a fact is disputed or undisputed by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

### III. Undisputed Facts[2]

*February 16, 2017 Disciplinary*

On February 16, 2017, Captain Randle wrote a disciplinary charging Walker with violating the following rules: 12-3, failure to obey verbal and/or written order of staff; 09-

---

[2] The facts are taken from those submitted by the parties which are supported by documentary evidence. Disputed facts are noted.

3, possession/introduction/manufacture of any drug, narcotic intoxicant, tobacco, chemical or drug paraphernalia not prescribed by medical staff; and 02-2, under the influence of and/or any use of illegal drugs, alcohol, intoxicating chemical or any medication in an unauthorized manner.  Doc. No. 45-5, *February 16, 2017 Disciplinary,* at 1; Doc. No. 45-10, *Declaration of Terrie Banister*, at ¶¶ 5-6.  Captain Randle wrote the disciplinary after observing that Walker was exhibiting signs he believed to be consistent with a person being under the influence of an illicit substance such as K-2 or synthetic marijuana.  Doc. No. 45-5 at 1.  Walker did not receive a drug test.  Doc. No. 45-1, *Excerpts from the September 10, 2018 Deposition of Anthony Walker*, at 8.

Walker's disciplinary hearing was held on February 23, 2017.  Doc. No. 45-2, *Declaration of Raymond Naylor*, ¶ 33; Doc. No. 45-5 at 2; Doc. No. 45-10, ¶ 4).  Terrie Banister was the disciplinary hearing officer.  *Id.*  At the hearing, Walker entered pleas of not guilty to all the disciplinary charges.  Doc. No. 45-2 at ¶ 35; Doc. No. 45-5 at 2; Doc. No. 45-10 at ¶ 6.  Banister testified that Walker provided the following statement:

> I woke up at 8 that morning. I was on my rack praying. The captain was in [my] face after I finished praying. My feet swollen. He asked me to walk. My feet were swollen. I walked a straight line. He does not state how I was acting. I went to the infirmary. They did not give me no urine test. I was not under the influence of no K-2. This stuff killed by cousin.

Doc. No. 45-10 at ¶ 7; *see also* Doc. No. 45-5 at 2.  Banister also testified that in addition to Walker's statement, she also considered Randle's F-1 Report and the Infirmary Report. Doc. No. 45-10 at ¶¶ 8 & 9; *see also* Doc. No. 45-11, *February 2017 Disciplinary Hearing Documents*, at 2.  She stated that Randle noted the following in his F-1 Report:

> On February 16, 2017, at approximately 8:37 a.m., [I] was advised by security that Inmate Walker, Anthony ADC# 107683 was in 10 barracks on his rack behaving erratically. Upon arrival, [I] asked Inmate Walker his name and if he was okay. He didn't respond. [I] then asked Inmate Walker if he could walk, he stated "yes." Inmate Walker stood up and attempted to walk, Inmate Walker staggered back and forth. [I] then placed Inmate Walker in restraints because his actions were consistent with a person under the influence of an illicit substance such as K-2 or synthetic marijuana. [I] and additional security escorted Inmate Walker to the main infirmary for a medical assessment. After the medical assessment, a pre-lock up was completed and Inmate Walker was escorted to EARU-Max for housing.

*Id.* The Infirmary Report from that day states, "per security appears to be under the influence." Doc. No. 45-11 at 3. The report also notes that Walker stated, "I don't know what I'm getting locked up for, I was sleeping." *Id.*

Banister testified that, after a fair and impartial consideration of the evidence, including Walker's statement, she found Walker not guilty of violating rules 12-3 and 09-3. Doc. No. 45-10 at ¶¶ 11 & 12; *see also* Doc. No. 45-5 at 2. Banister stated that she found Walker guilty of violating rule 02-2, under the influence of and/or any use of illegal drugs, alcohol, intoxicating chemical or any medication in an unauthorized manner. *Id.* She sentenced Walker to fifteen days in punitive isolation and reduced his class status. *Id.*

Raymond Naylor, the ADC's Internal Affairs/Disciplinary Hearing Administrator and custodian of the ADC's disciplinary hearing documents, reviewed Walker's disciplinary appeal file. Doc. No. 45-2 at ¶¶ 2 & 31. According to Walker's disciplinary file, Walker appealed Banister's decision to Warden Andrews, Naylor, and ADC Director Wendy Kelley. Doc. No. 45-2 at ¶¶ 38-39; Doc. No. 45-5 at 2-3. The disciplinary hearing officer's decision was affirmed at all levels. *Id.*

*May 4, 2017 Disciplinary*

On May 4, 2017, while conducting chow call, Lieutenant Golatt observed Walker dragging against the wall. Doc. No. 63, *Declaration of Leroy Golatt*, at ¶ 5. Golatt testified that Walker was unable to coordinate his steps and unable to stand on his own. *Id.* Golatt also recalled that Walker's speech was slurred. *Id.* Golatt testified that Walker was unable to stand on his own when he gave Walker a direct order to stand up. *Id.* at ¶ 6. He also testified that Walker appeared to be under the influence of an illicit drug such as K-2 or synthetic marijuana. *Id.* at ¶ 7. When Walker failed to comply with Golatt's order, Golatt went over to assist Walker in standing up. *Id.* at ¶ 9. Golatt stated that he also called for assistance and placed Walker in hand restraints. *Id.* He also stated that Walker was escorted to the infirmary after the officers arrived. *Id.* at ¶ 10.

In his declaration, Golatt explained that this was not the first time that he had encountered an inmate under the influence of K-2 or synthetic marijuana. *Id.* at ¶ 8. He also explained that, during the previous encounters, he observed several instances where the inmates would at first appear unable to control themselves only to suddenly become combative. *Id.* Golatt testified that he had also observed instances where the inmates were lying still on their rack one minute and the next minute experiencing convulsions and shaking uncontrollably. *Id.* Golatt testified that, at the time, EARU did not have the equipment necessary for testing inmates for the presence of K-2 or synthetic marijuana.[3]

---

[3] Walker disputes that the ADC did not have the necessary equipment to test for K-2 because the ADC's drug testing policy, AD 13-17, specifically lists K-2 as a drug the ADC tested. *See* Doc. No. 54 at 17. Whether or not the ADC had the capability to reliably test for K-2 at the time Walker received his disciplinaries is not a material fact. The only issue in this case

*Id.* at ¶ 11.  He stated that, during some of his previous encounters, the inmates would undergo drug testing only to have their test results come back negative for the presence of any illicit substances when it was obvious that the inmates were under the influence of something.  *Id.* at ¶ 12.  He testified that based on his observations of Walker's behavior and observations from his previous encounters, he suspected Walker was under the influence of K-2 or synthetic marijuana.  *Id.* at ¶ 13.

Golatt also testified that after Walker was taken to the infirmary, he wrote a disciplinary charging Walker with violating the following rules: 12-3, failure to obey verbal and/or written order of staff; 02-12, failure to keep one's person or quarters in accordance with regulations or failure to wear department issued ID or clothing according to unit policy; and 02-2, under the influence of and/or any illegal drug, alcohol, intoxicating chemicals or any medication in an unauthorized manner.  *Id.* at ¶ 14; *see also* Doc. No. 45-6, *May 4, 2017 Disciplinary*.

Walker's disciplinary hearing was held on May 10, 2017.  Doc. No. 45-6 at 2; Doc. No. 45-12, *Declaration of Joanna Franklin,* at ¶ 4.  Joanna Franklin was the disciplinary hearing officer at the hearing.  *Id.*  Franklin recalled that Walker waived his right to appear at the hearing.  Doc. No. 45-12 at ¶ 6; *see also* Doc. No. 45-6 at 2.  Franklin testified that, during the hearing, she considered Golatt's F-1 Report.  Doc. No. 45-12 at ¶ 7; *see also* Doc. No. 45-6 at 3; Doc. No. 45-13, *May 2017 Disciplinary Hearing Documents*.  Golatt noted the following in his F-1 Report:

---

is whether Walker was discriminated against by not having his disciplinary convictions reversed or modified because he was not tested.

> On May 4, 2017 approximately 2:20 a.m., [I] was present in the main hallway, zone (2) conducting chow call. I . . . observed, Inmate Walker dragging against the wall not able to coordinate his steps, and not able to stand on his own. It appeared that his action is one under the influence of an illicit drug such as K-2 or synthetic marijuana. I . . . called for assistance and placed Inmate Walker in hand restraint and escorted him to the main infirmary.

Doc. No. 45-12 at ¶ 8; Doc. No. 45-13 at 2.

Franklin further testified that after a fair and impartial consideration of the evidence, she found Walker not guilty of violating rule 02-12. Doc. No. 45-12 at ¶ 9. Franklin found Walker guilty of violating rules 12-3, failure to obey verbal and/or written order of staff and 02-2, under the influence of and/or any use of illegal drugs, alcohol, intoxicating chemical or any medication in an unauthorized manner. *Id.* at ¶ 10. She sentenced Walker to thirty days in punitive isolation and reduced his class status. Doc. No. 45-12 at ¶ 10; Doc. No. 45-6 at 2.

Because Walker waived his right to appear at the May 10, 2017 disciplinary hearing, he did not have the right to appeal the disciplinary hearing officer's decision per ADC policy.[4] Doc. No. 45-2 at ¶ 46. Walker did not appeal the May 10 disciplinary conviction.

---

[4] The disciplinary polices in effect during the timeframe relevant to this lawsuit are Administrative Directive 17-08 (AD 17-08) and Administrative Regulation 831 (AR 831). Doc. No. 45-2 at ¶ 5; Doc. No. 45-3, *Administrative Directive 17-08*, and Doc. No. 45-4, *Administrative Regulation 831*. An inmate must appear before the Major Disciplinary Court unless the inmate waives his/her appearance in writing or through behavior. Doc. No. 45-2 at ¶¶ 10-11; Doc. No. 45-3 at § VII(E)(4). When an inmate waives his/her appearance, a waiver form is completed and a copy is provided to the inmate. *Id.* If an inmate waives his/her right to appear and is found guilty, the inmate cannot appeal the decision of the disciplinary court. *Id.* The waiver form must be reviewed by the warden or his designee. *Id.* Naylor testified that the ADC's Inmate Disciplinary Policy, AD 17-08, provides that if an inmate waives his right to appear and is found guilty, the inmate cannot appeal the disciplinary hearing officer's decision. *Id.*

Doc. No. 56 at 2.  Walker's May 4, 2017 disciplinary conviction has not been reversed. Doc. No. 45-2 at ¶ 46.

*Other Inmates' Disciplinaries*

In his complaint and amended complaint, Walker asserts that his Fourteenth Amendment Rights under the Equal Protection Clause were violated because inmates Adrian Wiley, Antonio Brown, and Andrew Davis were each suspected of using synthetic marijuana and convicted of violating rule 02-2, but had their disciplinary convictions reversed or modified because they had not been given a drug test.  Doc. No. 2 at 7; Doc. No. 7 at 1.  Walker believes that he should have received the same treatment as Wiley, Brown, and Davis.  Doc. No. 45-1 at 9-10.

Walker testified that he knew that Wiley, Brown, and Davis were charged with violating rule 02-2 because he saw their disciplinaries when they were in the barracks. Doc. No. 45-1 at 11-12.  Walker stated that the appeal forms for their disciplinaries indicated that their disciplinaries were reversed or modified.  *Id.* at 12.  Walker testified that Wiley, Brown, and Davis each told him that their disciplinary convictions were reversed or modified because they had not been given drug tests.  *Id.* at 13-14.

Naylor testified that he reviewed the disciplinary hearing files for Wiley, Brown, and Davis and specifically searched those files for any disciplinaries charging them with violating rule 02-2.  Doc. No. 45-2 at ¶ 48.

Naylor found only one disciplinary charging Adrian Wiley with violating rule 02-2.  *Id.* at ¶ 49.  Wiley was issued the disciplinary after he tested positive for marijuana during a random drug test.  Doc. No. 45-2 at ¶ 49; *see also* Doc. No. 45-7, *Adrian Wiley*

*(ADC# 144385) Disciplinary* (submitted under seal). Wiley was found guilty of the charge, and his disciplinary conviction was not reversed or modified. Doc. No. 45-2 at ¶¶ 51-52; Doc. No. 53.

Naylor found that Antonio Brown received a disciplinary for violating rule 02-2 after EARU staff observed him vomiting and yelling loudly. Doc. No. 45-2 at ¶ 53; *see also* Doc. No. 53, *Antonio Brown (ADC #124175) Disciplinary* (submitted under seal). Brown was convicted of that charge, and it has not been reversed or modified. Doc. No. 45-2 at ¶ 56; Doc. No. 53.

Naylor found three disciplinaries charging Andrew Davis with violating rule 02-2. Doc. No. 45-2 at ¶ 57; Doc. No. 53, *Andrew Davis's (ADC # 093303) disciplinaries* (submitted under seal). Davis' first disciplinary was written on January 26, 2016, after he tested positive for marijuana. Doc. No. 45-2 at ¶ 58; Doc. No. 53. Davis was found guilty of violating rule 02-2, and that conviction has not been reversed or modified. Doc. No. 45-2 at ¶ 59; Doc. No. 53. Naylor testified that Davis received two more disciplinaries later in 2017, charging him with violating rule 02-2, after EARU officers observed him showing symptoms of someone under the influence of synthetic marijuana. Doc. No. 45-2 at ¶¶ 60-66; Doc. No. 53. Neither of those disciplinaries have been reversed or modified. *Id.*

Walker produced a disciplinary record for Davis that Naylor did not find in his review.[5] Davis received a disciplinary on April 9, 2017, charging him with an 02-2

---

[5] Walker insists that Naylor's testimony not be relied upon in ruling on the defendant's motion for summary judgment because he did not locate the April 2017 disciplinary received by Davis. The Court need not rely on Naylor's declaration; Walker does not dispute that the

violation based on suspected use of K-2 or synthetic marijuana.  Doc. No. 54 at 7.  At

Davis' disciplinary hearing, he stated:

> I am a diabetic and I went to chow and didn't take my medicine that night,
> so I doubled up on my medicine.  I told my homeboy that I didn't feel well,
> I put my head down and passed out.  When I woke up they said I was on K-
> 2.  I asked them for some help because my sugar had dropped.  I have not
> used any drugs in over two years.

*Id.* at 8.  Hearing officer Lorie Taylor found Davis guilty of the 02-2 drug charge.  *Id.*

Davis appealed to the warden, to Naylor, and to Kelley.  *Id.* at 6.  Davis listed a number of

reasons for his appeal including the fact that he had not been drug tested.  *Id.*  Kelley

modified the disciplinary conviction to not guilty on the 02-2 drug charge.  *Id.* at 5.  She

stated:

> After a thorough review of all the documents pertaining to this matter, I am
> upholding the guilty verdict of rule violation 03-5/Out of place assignment
> due to you not being on your assigned rack and I'm modifying the 02-
> 2/Under the influence of and/or any use of illegal drugs, alcohol, intoxicating
> chemicals or any medication in an unauthorized manner to read not guilty.
> Therefore, your disciplinary is modified.

*Id.*  Before reaching her conclusion, Kelley specifically noted Davis' statement about

having low blood sugar at the time.  *Id.*

Walker also submitted an affidavit by Davis in which he testifies that his April 9,

2017 disciplinary was reversed because he was not drug tested.  Doc. No. 54 at 24.

Specifically, he states, "one of the reasons for the disciplinary change 02-2 was modified

is because I was never given the opportunity to submit a urine sample to be tested by an

---

disciplinaries cited by Naylor were in fact reversed or modified, and he has come forward with
proof of only one instance in which another inmate's K-2 disciplinary was reversed or modified.

outside toxicology labaratory [sic], or an on site test as the policy rule #13-17 of the [ADC EARU]." *Id.*

Walker states that he cannot provide proof that the other two inmates, Wiley and Brown, had modified or reversed disciplinaries because they have been released from prison.

## IV. Discussion

### A.    *Sovereign Immunity*

Defendants correctly assert that Walker's monetary claims against them in their official capacities are barred by sovereign immunity.[6]   A suit against a defendant in his or her official capacity is in essence a suit against the State of Arkansas, and any official capacity claim for monetary damages against that defendant is barred by the doctrine of sovereign immunity.  *Will v. Michigan Department of State Police, et al.*, 491 U.S. 58, 71 (1989)*; Nix v. Norman*, 879 F.2d 429, 431-432 (8th Cir. 1989).   Accordingly, the undersigned recommends that defendants be awarded summary judgment with respect to Walker's official capacity claims.

### B.    *Qualified Immunity*

Defendants assert they are entitled to qualified immunity with respect to Walker's individual capacity claims.   Qualified immunity protects government officials from liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person [in their positions] would have

---

[6] Walker's claims for injunctive relief were previously dismissed.  Doc. Nos. 8 & 15.

known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982).   Qualified immunity is a question of law and is appropriately resolved on summary judgment.  *McClendon v. Story County Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  To determine whether a defendant is entitled to qualified immunity, the Court must consider two questions: (1) do the facts alleged by plaintiff establish a violation of a constitutional or statutory right; and (2) if so, was that right clearly established at the time of the defendant's alleged misconduct.  *Wright v. United States*, 813 F.3d 689, 695 (8th Cir. 2015).  Courts may exercise "their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand."  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

An inmate bringing an equal protection claim must show intentional or purposeful discrimination.  *Klinger v. Dep't. of Corr.,* 31 F.3d 727, 733 (8th Cir.1994).  "The heart of an equal protection claim is that similarly situated inmates were treated differently and that this difference in treatment bore no rational relationship to any legitimate penal interest." *Weiler v. Purkett,* 137 F.3d 1047, 1051 (8th Cir.1998) (citing *Timm v. Gunter,* 917 F.2d 1093, 1103 (8th Cir.1990)).  Walker did not allege that he was discriminated against because he is a member of a protected class.  Rather, he claims to have been treated differently from similarly situated prisoners.  Specifically, he alleges that Wiley, Brown, and Davis received disciplinaries for suspected K-2 use despite not taking a drug test, and that these inmates' disciplinaries were later reversed or modified while Walker's disciplinaries were not.

In *Nolan v. Thompson,* 521 F.3d 983 (8th Cir. 2008), the Eighth Circuit recognized that an equal protection claim can survive as a "class-of-one" even if a plaintiff is not a member of a protected class or his fundamental rights have not been violated:

> Because Nolan does not allege that he is a member of a protected class or that his fundamental rights have been violated, he must prove that the Board systematically and "intentionally treated [him] differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L.Ed.2d 1060 (2000) (per curiam) ("class-of-one" standard); *see also Phillips v. Norris*, 320 F.3d 844, 848 (8th Cir. 2003). Identifying the difference in treatment is especially important in class-of-one cases for statistical reasons. In the absence of a large number of disadvantaged people sharing a single characteristic, "there is no way to know whether the difference in treatment was occasioned by legitimate or illegitimate considerations without a comprehensive . . . canvassing of all possible relevant factors." *Jennings v. City of Stillwater*, 383 F.3d 1199, 1213-14 (10th Cir. 2004). A class-of-one plaintiff must therefore "provide a specific and detailed account of the nature of the preferred treatment of the favored class," especially when the state actors exercise broad discretion to balance a number of legitimate considerations. *Id.* at 1214-15.

*Nolan*, 521 F.3d at 989-990.

Although Walker alleges that he was treated differently than three similarly situated prisoners, he only provides proof of one prisoner who had a disciplinary for suspected K-2 use reversed. Walker acknowledges that he cannot obtain proof that inmates Wiley or Brown had K-2 disciplinaries reversed because they have been released from jail. One example of different treatment is insufficient to show that Walker was "systematically and intentionally treated differently." *See e.g., Weiler v. Purkett*, 137 F.3d at 1051 ("A few individual examples of unequal treatment are insufficient to provide more than minimal support to an inference of classwide purposeful discrimination."); *Inmates of Neb. Penal and Correctional Complex v. Greenholtz,* 567 F.2d 1368, 1381 (8th Cir.1977) (two or three

individual cases of discrimination insufficient to provide more than minimal support to an inference of classwide purposeful discrimination).[7]

Additionally, the reversal of Davis' K-2 disciplinary does not indicate why Davis' disciplinary was reversed. Although Davis and Walker surmise that it was because Davis had not been drug tested, Director Kelley does not state that is the reason.[8] Just before concluding that she was reversing Davis' K-2 conviction, Kelley quoted the statement made by Davis at his disciplinary hearing in which he explained that he seemed intoxicated when he was charged with K-2 use because he was a diabetic experiencing low blood sugar. Accordingly, Davis and Walker are not entirely similarly situated – although neither were drug tested before receiving disciplinaries for suspected K-2 use, Davis was a diabetic who alleged he had low blood sugar at the time. In the one disciplinary that Walker appealed,

---

[7] *See also Hansler v. Kelley*, No. 6:16-CV-06088, 2017 WL 3597893, at *9 (W.D. Ark. July 20, 2017), *report and recommendation adopted,* No. 6:16-CV-06088, 2017 WL 3592446 (W.D. Ark. Aug. 21, 2017) ("Nor does the fact that Plaintiff did not receive his Wiccan Bible when other Wiccan practitioners allegedly did, alone, state an unequal protection claim."); *Thrash v. White*, No. 5:09-CV-00095, 2010 WL 6749181, at *3 (E.D. Ark. Dec. 23, 2010), *report and recommendation adopted,* No. 5:09-CV-00095, 2011 WL 2110372 (E.D. Ark. May 27, 2011) ("An isolated example of unequal treatment is insufficient to establish that the difference in treatment was motivated by Plaintiffs' membership in a protected class, or that it burdened a fundamental right."); *Hughes v. Banks*, No. 1:07-CV-00027, 2011 WL 3861368, at *2 (E.D. Ark. Aug. 19, 2011) (equal protection claim failed where plaintiff only identified one inmate who was allegedly treated differently than him).

[8] Director Kelley is the only defendant alleged to have treated Walker differently than another inmate by rejecting the one appeal he filed and reversing inmate Davis' disciplinary. Walker's claims against the other defendants are also subject to dismissal because they are not alleged to have any personal involvement in his alleged equal protection violation. *See Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006) ("Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights.").

Walker denied using K-2 and stated that his feet were swollen.  Walker did not allege a similar medical condition that would explain his behavior.

Because Walker cannot prove that he was systematically and intentionally treated differently than similarly situated inmates, his equal protection claim fails and defendants are entitled to qualified immunity.

## IV.  Conclusion

Defendants are entitled to summary judgment with respect to Walker's official capacity claims, and because Walker fails to establish a constitutional violation, defendants are entitled to qualified immunity as to Walker's individual capacity claims.  The undersigned recommends that the defendants' motion for summary judgment (Doc. No. 45) be granted, and Walker's claims against defendants be dismissed with prejudice.

DATED this 11th day of July, 2019.

_____
UNITED STATES MAGISTRATE JUDGE